UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RASHEED YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19-CV-003345-SEP |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

    This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Rasheed Young for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Because there is substantial evidence to support the decision denying benefits, the Court will affirm the Commissioner's denial of Plaintiff's application.

**I.   BACKGROUND**

    On October 18, 2016, an application for SSI was filed on behalf of Plaintiff, who was under the age of eighteen as of the filing date. (Tr. 146-51). Plaintiff alleged disability based on depression and attention deficit hyperactivity disorder, with an onset date of October 18, 2016. (Tr. 73). His application was initially denied on February 15, 2017. (Tr. 73-77). Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 78-80).

    Plaintiff attained the age of eighteen by the time of the hearing, which was held on September 25, 2018. Plaintiff, who was represented by counsel, testified at his hearing that he had completed the ninth grade, and that he had problems at school with focusing and paying attention, but that he did not have any problems at home. (Tr. 47). He further testified that he was frequently absent from school when he was still attending, and eventually withdrew because

he "stopped going." (Tr. 50). He testified that he was able to read and write, do multiplication tables, and division. (Tr. 52). He testified that he was able to get along with the other kids. (Tr. 53). However, he also testified that he had problems controlling his mood, and that he had been experiencing anger after one of his friends died. (Tr. 54). He further testified that he had been a daily user of marijuana, but as of the date of the hearing, he had not smoked any for about a week. (Tr. 55-56). When asked how he obtained marijuana, he testified that he received money for doing household chores, and that he was able to find people who were selling it. (Tr. 56-57).

In an opinion issued on February 6, 2019, the ALJ found that prior to attaining the age of eighteen, he did not have an impairment or combination of impairments that would render him "disabled" under the Act. (Tr. 29). The ALJ also found that Plaintiff had not developed any new impairment since turning eighteen, and that Plaintiff was not under a "disability" as defined in the Act since the day he turned eighteen through the date of the decision. (Tr. 29-34). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 142-45). On October 29, 2019, the SSA's Appeals Council denied his Request for Review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

As to Plaintiff's testimony, educational history, and medical records, the Court accepts the facts as provided by the parties. The Court will address specific facts related to the issues raised by the parties as needed in the discussion below.

**II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

   **A. Child Disability**

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if

2

the child's impairments(s) is severe, the Commissioner must determine whether such impairment(s) meets, medically equals or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations (the Listing(s)).  20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004).  If the impairment(s) meets or medically equals a Listing, the child is disabled.  *Garrett*, 366 F.3d at 647.  If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals a listed impairment.  20 C.F.R. § 416.926a.  If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled.  *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 956 (E.D. Mo. 2017).

To qualify as functionally equal to a listed impairment, a child's condition must result in an "extreme" limitation of functioning in one domain of functioning, or "marked" limitations of functioning in two domains of functioning.  20 C.F.R. § 416.926a(a).  The domains are "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  The six domains used by the Commissioner in making such a determination are:  1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being.  *Id.*  If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled.  *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).  The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence.  42 U.S.C. § 405(g).

A child-claimant has a "marked" limitation in a domain when his

> impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities.  [His] day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R.

§ 416.926a(e)(3). In determining whether a limitation on a child-claimant's functioning may be marked or extreme, the Commissioner must review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how appropriately, effectively and independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

### B. Adult Disability

With respect to adult claimants, the Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether an adult claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); [1] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the

---

[1] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

4

"listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if he cannot make such an adjustment, he will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.   THE ALJ'S DECISION

Applying the foregoing analyses, the ALJ here found that prior to turning eighteen years of age, Plaintiff had the severe impairments of unspecified mood disorder and intellectual disability. (Tr. 20). However, the ALJ found that Plaintiff had no limitations or less than marked limitations in all six domains of functioning, and thus, he did not have an impairment or combination of impairments equal to or functionally equivalent to a listed impairment. (Tr. 23-29). Consequently, the ALJ found that Plaintiff was not disabled prior to attaining adulthood. (Tr. 29).

The ALJ found that Plaintiff had the same severe impairments after turning eighteen, that he had developed no new severe impairments, and that Plaintiff did not have an impairment or

5

combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 29-32). The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations, including the following: he is limited to simple, routine, repetitive tasks; he should only work in a low stress job with only occasional changes in the work setting; and he should have only occasional interaction with the public, coworkers, and supervisors. (Tr. 32).

The ALJ found that Plaintiff had no past relevant work. (Tr. 33). However, considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert, the ALJ found that Plaintiff would be able to perform occupations including hand packer (Dictionary of Occupational Titles (DOT) No. 920.587-018, 700,000 jobs in the national economy); material mover (DOT No. 922.687-058, 2,000,000 jobs in the national economy); and dishwasher (DOT No. 318.687-010, 500,000 jobs in the national economy). (Tr. 34). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from August 25, 2018, the day Plaintiff attained the age of eighteen, through February 6, 2019, the date of the decision. (Tr. 34).

## IV.   STANDARD FOR JUDICIAL REVIEW

For both child and adult disability determinations, the Commissioner's findings are conclusive upon this Court if they comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that

decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

V.     DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ's determination that Plaintiff was not disabled under the Act was not supported by substantial evidence because it was based solely on the opinion of state agency medical expert Dr. Keith Allen, whose opinion does not constitute substantial evidence because it was rendered without review of certain documents entered in the file subsequent to the issuance of his opinion; and (2) the ALJ did not properly weigh the opinion of Plaintiff's treating psychiatrist. In response, the Commissioner maintains that the ALJ properly evaluated the medical opinions of record and based his decision on substantial evidence in the record as a whole.

### A.  ALJ Properly Relied on Opinion of State Agency Physician

Plaintiff argues that the ALJ's finding that his incapacities did not functionally equal a listed impairment is not supported by substantial evidence because he relied "solely" on the opinion of non-examining state agency physician Dr. Keith Allen. Doc. [13] at 3-4. Plaintiff asserts that Dr. Allen's opinion cannot constitute substantial evidence because it was rendered prior to entry of all the evidence, including a copy of his Individualized Education Plan (IEP) and related school records, and the opinion of his treating psychiatrist, Dr. LaRhonda R. Jones. Plaintiff maintains that these additional records demonstrate at least a marked limitation in the domains of acquiring and using information, interacting and relating to others, and attending and completing tasks.

Dr. Allen reviewed the evidence of record on February 14, 2017, and concluded that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself, and that he had no limitations in moving about and manipulating objects, or with respect to his health and physical

7

well-being. (Tr. 67-68). The ALJ gave Dr. Allen's opinion "significant" but not full weight. (Tr. 24). The ALJ found Dr. Allen to be well versed in the Act and its regulations and noted that Dr. Allen had many years of experience evaluating individuals' ability to function. (Tr. 24-25). The ALJ further found Dr. Allen's opinion to be supported by the other evidence of record, including the observations in Dr. Jones's treatment records, as well as Plaintiff's parents and teachers. (Tr. 24).

Plaintiff argues that Dr. Allen's opinion is insufficient to support the ALJ's decision. Specifically, Plaintiff objects to the ALJ's reliance on Dr. Allen's opinion because it was issued in February 2017, approximately one-and-a-half years before Plaintiff's hearing before the ALJ in September 2018, and before the entry of Dr. Jones's opinion, as well as the details of Plaintiff's school IEP. However, nothing in the Social Security regulations requires a report to be within a certain time period for an ALJ to rely on it. *See Gallup v. Saul*, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020). Additionally, "'[b]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.'" *Hildreth v. Saul*, 2020 WL 5517588, at *8 (E.D. Mo. Sept. 14, 2020) (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Nor does legal authority require a consultant's medical opinion to be based on subsequently-created medical records for an ALJ to rely on it. *Barker v. Colvin*, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").

Furthermore, the opinions of state agency medical examiners merit significant consideration, as ALJs are required by regulation to consider their findings of fact about the nature and severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(f); 20 C.F.R. §§ 404.1513a(b)(1) (ALJs "must" consider evidence proffered by a state agency disability examiner, "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *see also Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) (An ALJ may credit the opinion of a non-examining or non-treating medical provider over the assessments or notes of the treating physician.).

8

Additionally, the ALJ did not, as a matter of fact, base his decision "solely" on the opinion of Dr. Allen.  The ALJ evaluated Dr. Allen's opinion within the record as a whole, including the record evidence added after that opinion was formed.  While Dr. Allen was not afforded an opportunity to review Dr. Jones's opinion or the information found in Plaintiff's IEP, the ALJ was, and he relied on the same when crafting his findings.  (Tr. 22-32).  The ALJ also considered the observations of Plaintiff's teachers, doctors, and parents.  (Tr. 24).  Upon consideration of these additional materials, the ALJ concluded that the record—as it existed at the time of Dr. Allen's opinion—supported his opinion, and nothing in the record after his opinion altered its substance.  Thus, the ALJ did not err in relying on Dr. Allen's opinion.  *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [the] RFC.").

**B.  Weighing the Opinion of Plaintiff's Treating Psychiatrist**

Plaintiff argues that the ALJ improperly discounted the opinion of his treating psychiatrist, Dr. LaRhonda R. Jones.  The record indicates that Dr. Jones treated Plaintiff between April 17, 2015, and May 25, 2018, during which time Plaintiff had four appointments with her.  (Tr. 684-706).  Dr. Jones completed a medical source statement for Plaintiff on September 14, 2018.  (Tr. 379-82).  Dr. Jones opined that Plaintiff had extreme limitations in almost all areas of evaluation.  (Tr. 379-82).  For example, she found that he experienced "extreme interference" with concentration, persistence and pace, and "extreme" limitations in his ability to complete tasks in a timely manner, ignore distractions, and sustain regular attendance.  (Tr. 379).  She opined that Plaintiff had extreme limitations in the ability to follow oral instructions to carry out tasks, and in his ability to use reason and judgment to make work related decisions.  (Tr. 380).  She further opined that Plaintiff had marked limitations in the ability to understand and learn instructions and procedures.  *Id.*  She also indicated that Plaintiff had extreme limitations in his ability to work a full day without needing more than the normally allotted rest periods, as well as in his ability to regulate emotions, control his behavior, and maintain wellbeing in a work setting.  (Tr. 380).  She further opined that if Plaintiff were to attempt full-time work, he would be absent three or more times per month due to his psychologically-based symptoms.  (Tr. 380).  She opined that Plaintiff had extreme limitations in his ability to interact with others, causing him to be unable to perform in a setting that required

9

any contact with the general public, and that he could not perform for supervisors without exhibiting insubordinate behavior.  (Tr. 381).

When asked to provide Plaintiff's current diagnosis, Dr. Jones indicated PTSD, unspecified mood disorder, and substance use disorder.  (Tr. 382).  When asked to indicate the objective signs and symptoms of Plaintiff's limiting conditions, she wrote, "isolation, irritability, crying spells, anger, aggression, [and] labile mood."  (Tr. 382).  When asked to list other reasons that Plaintiff may have difficulty working at any job, she indicated "inability to concentrate . . . [and] lack of organization and motivation."  (Tr. 382).  Plaintiff argues that under 20 C.F.R. § 404.1527(c),[2] the ALJ should have accorded "controlling weight," to the opinion of his treating physician, and the failure to do so constitutes reversible error.

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight."  20 C.F.R. § 404.1527(c)(2).  The reason for the rule is that treating physicians with a long treatment relationship with a claimant are expected to be able to provide a more detailed, longitudinal picture of the claimant's medical impairments.  *See* 20 C.F.R. § 404.1527(c)(2).

However, "[a] treating physician's opinion does not automatically control, since the record must be evaluated as a whole."  *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995).  "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Skelton v. Colvin*, 2016 WL 320129, at *8 (E.D. Mo. Jan. 26, 2016) (quoting *Goff*, 421 F.3d at 790); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).  The Commissioner may also assign "little weight" to a treating physician's opinion when it is either internally inconsistent or conclusory.  *Chesser v. Berryhill*, 858 F.3d 1161, 1164–65 (8th Cir. 2017).

---

[2]  These regulations apply to claims filed before March 27, 2017, including the claim at issue in this case.  For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated.  *See* 20 C.F.R. § 404.1520c.

10

Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ evaluates the opinion based on several factors, including the consistency of the opinion with the record as a whole, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). In weighing a treating source opinion, it is the ALJ's role to resolve conflicts in the evidence, and the ALJ's finding should not be disturbed so long as it falls within the "available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

The ALJ reviewed Dr. Jones's opinion and concluded that he could not give it significant weight, finding it to be unsupported by her treatment notes or by the other evidence of record. (Tr. 33). As noted by the ALJ, Plaintiff's mental status examinations were regularly within normal or almost normal limits, showing intact memory and logical, goal-directed, thought processes. (Tr. 24-26, 33, 359, 361, 371-72, 377). The ALJ acknowledged that Plaintiff's I.Q. test score was 66 on the Wechsler Individual Achievement Test, administered in February 2017, and that he had difficulty staying focused and on-task at school, skipped school, and was sometimes defiant with teachers. (Tr. 26, 32, 297, 300, 370-71, 377). However, the ALJ noted that Plaintiff's IEP recommended that he be in a regular classroom eighty percent of the time, indicating that he was in the low average range of cognitive abilities. (Tr. 32, 296-97, 300-02, 313, 333, 370). His IEP also indicated that Plaintiff had a "pleasant personality," and "gets along well with his peers" which would "be a benefit as he works to achieve his post-secondary goals." (Tr. 215). The ALJ also considered evidence that Plaintiff had no problems at home with aggression, followed house rules, and his behavior was cooperative and appropriate. (Tr. 26, 47, 53. 359, 361, 370-71, 377).

Additionally, the ALJ noted that Dr. Jones's own treatment records do not support the extreme, disabling limitations she included in her opinion. (Tr. 33, 359-77). The ALJ noted that while Dr. Jones diagnosed a mood disorder and ADHD, the record contained no medical treatment records to support that assessment. (Tr. 33). Additionally, Dr. Jones's treatment notes, as more fully discussed below, showed largely normal mental status examinations. (Tr. 24, 33, 359, 361, 371-72, 377). Furthermore, her notes, while describing difficulties with focus, attention, and behavior at school, do not describe a young person with the extreme functional limitations indicated in her opinion. *Id*. Finally, the ALJ noted that there was no evidence that

11

Dr. Jones considered Plaintiff's substance abuse, noting that she did not provide any analysis of how Plaintiff's illegal drug abuse may have affected his mental status. (Tr. 33).

Plaintiff first saw Dr. Jones on April 17, 2015, when he was fourteen years of age. (Tr. 359). This is the earliest evidence in the record of Plaintiff receiving any type of outpatient psychiatric care. Dr. Jones's treatment notes from that visit indicate that Plaintiff was taking no medications, that all his developmental milestones were met on target, his affect was appropriate, his mood was good, his behavior was appropriate and cooperative, his speech was of a regular rate, tone, and volume, he was alert and oriented towards person, place, and time, his memory was intact, his thought processes were logical and goal directed, and he reported no paranoia or delusions. (Tr. 359). Plaintiff denied any wish to harm himself and indicated that he smoked cannabis daily. (Tr. 359).

Plaintiff saw Dr. Jones again on February 5, 2016, almost one year later. (Tr. 361). At this visit, Dr. Jones noted that Plaintiff had appropriate affect, "okay" mood, his behavior was appropriate and cooperative, he was well oriented to person, place, and time, his memory was intact, his thought processes were logical and goal directed, and his fund of knowledge was average. (Tr. 361). Plaintiff indicated that he did not have any problems at home, but that he had difficulty staying focused at school and was skipping class. (Tr. 361). Plaintiff also reported that he was still using cannabis. (Tr. 361). His next visit with Dr. Jones was on September 16, 2016. (Tr. 372). Her treatment notes from that visit indicate that his mother reported that Plaintiff was changing clothes multiple times per day, which she found strange, but Plaintiff denied that this was indicative of any problem. (Tr. 372). Dr. Jones noted that Plaintiff's sleep and appetite were stable, he had no major issues at school and his grades were fair, and he had no major issues in the home. (Tr. 372).

On November 4, 2016, Dr. Jones entered a "Case Review" into Plaintiff's treatment notes. (Tr. 374). This treatment note does not appear to have been entered in conjunction with an appointment with Plaintiff, but rather, was a summary of his status, diagnoses, and treatment. (Tr. 374). She noted that she had diagnosed Plaintiff with an "unspecified mood disorder, most likely on the Depressive Disorder spectrum," as well as attention deficit disorder, and had prescribed Concerta and Seroquel for these conditions. (Tr. 374-75). Dr. Jones further indicated that Plaintiff continued to have trouble concentrating at school, and that he had a bad attitude about school and did not like to stay in class. (Tr. 375). She noted that he may benefit from a

12

504 plan or IEP to allow for needed accommodations at school. (Tr. 375). Dr. Jones further noted that "Rasheed is an intelligent kid, with a lot of potential . . . [who] needs to be encouraged to use his skills academically instead of avoiding productive learning that will help him succeed in school and in life." (Tr. 375).

The next appointment with Dr. Jones was on May 25, 2018. (Tr. 376). She indicated that Plaintiff reported that he had stopped attending school, and that she had encouraged him to get his GED. (Tr. 376). Plaintiff also reported experiencing grief over the death of a friend and his grandfather, and that he felt anxious and paranoid. (Tr. 376). Dr. Jones's examination notes from this appointment indicated that she found his mental affect appropriate, his behavior cooperative, that he was well oriented to person, place, and time, his memory was intact, his fund of knowledge average, and his thought processes were logical. (Tr. 377). This was the last entry in the record of any treatment with Dr. Jones.

Discounting Plaintiff's treating psychiatrist's opinion for lack of support in the record was proper. A medical source opinion that is inconsistent with other objective medical evidence cannot be afforded controlling weight. "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016). *See also* 20 C.F.R. § 404.1527(c)(2) (to be afforded controlling weight, a medical opinion must be consistent with the record as a whole, and must be supported by the objective medical evidence); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Dr. Jones's treatment notes do indicate various limitations in his ability to function, but they do not reflect the extreme limitations in her medical source statement. (Tr. 359-82). The ALJ also reasonably considered that the other objective educational and medical evidence did not support the extreme limitations indicated by Dr. Jones. (Tr. 33). *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (mild or normal objective findings undermine allegations of disability). Therefore, the ALJ did not err in finding that Dr. Jones's opinion was inconsistent with her own notes and with the record as a whole, and in discounting it accordingly.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion with regard to Dr. Jones's opinion. But it is the ALJ's function to resolve evidentiary conflicts, and this Court's task is not to reweigh the evidence

presented to the ALJ. *Renstrom*, 680 F.3d at 1065. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### VI. CONCLUSION

Having reviewed the entire record, the Court finds that the ALJ considered the medical and educational evidence as a whole and made a proper determination. The Court also finds that the ALJ did not err in discounting the opinion of Plaintiff's treating psychiatrist. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 3rd day of June, 2021.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE